## DETROIT EDISON CO. v. EWING.

### No. 8750.

Circuit Court of Appeals, Sixth Circuit.

Oct. 6, 1941.

Harvey A. Fischer, of Detroit, Mich. (Oxtoby, Robison & Hull, of Detroit, Mich., on the brief), for appellant.

Elmer H. Groefsema and Jos. B. Beckenstein, both of Detroit, Mich. (Samuel Stone, of Toledo, Ohio, and Jos. B. Beckenstein, of Detroit, Mich., on the brief), for appellee.

Before SIMONS, HAMILTON, and McALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

Appellee, while painting a house in Monroe, Michigan, came in contact with electric

wires owned and installed by appellant and, as a result, received injuries for which he brought suit for negligence. On trial before a jury he received a verdict upon which judgment was entered. Motions for judgment notwithstanding verdict, and for a new trial were denied.

On review it is contended that there was no proof that appellant was guilty of negligence causing the injuries; that the proximate cause of the injuries was the contributory negligence of the appellee; that the verdict of the jury was against the overwhelming weight of the evidence; and that the trial judge committed reversible error in his charge to the jury.

At the time the accident occurred, appellee was standing on a stepladder which was about six feet in length. The ladder was resting against the side of the house at a point about five feet below three knoblike insulators. Above the insulators, a cornice projected approximately eighteen inches from the side of the house. Attached to the insulators were three wires, the outside wires being charged with one hundred ten volts each, and the center wire being a ground wire. According to evidence introduced on behalf of the appellee, the wires were wound around the insulators and had been cut off and left with the ends sticking up about two inches. These ends were not taped or insulated, and the insulation on the wire had frayed, leaving the ends of the wire bare for a distance of about one-half inch. The point of attachment of the wires to the insulators was about ten inches from the side of the building. Between the cornice and the bare ends of the upturned wires was a distance of about six inches. Appellee was standing on the step next to the top of the stepladder and from this position the insulators were about a foot above his head. In attempting to paint the side of the house, between the cornice and the insulators, appellee leaned back and held on to the eave trough, along the edge of the cornice, with his right hand, and used a paint brush, about four inches long, with his left hand. Appellee, according to his testimony, finished making one application of paint in this manner and had let go of the eave and stooped down to dip his brush in the pail of paint. As he again reached up, the shock occurred and appellee fell from the ladder to the earth. He did not know with what wire or wires he came in contact. Medical evidence was introduced to sustain his contention that he had received an electrical shock, causing the injuries for which he claimed damages.

It is contended by appellant that Ewing would not have received a shock from only one of the wires carrying the current, but that it would be necessary for him to come in contact with two separate wires in order to complete a circuit; and appellant's theory is that, if appellee suffered the alleged injuries, it was as a result of his grasping two of the wires in order to support himself. Such conduct, it is maintained, would constitute contributory negligence.

The theory above outlined is strongly urged by appellant as being supported by evidence that leads to the only reasonable explanation of the accident, and such contention is based upon alleged statements in the nature of admissions made by appellee. It is claimed that while appellee was in the hospital on the day after the accident, Mr. Hallen, a representative of the appellant company, called upon plaintiff. Hallen stated that he was told by appellee that he had taken hold of two of the wires to steady himself as he was preparing to ascend higher on the ladder. Hallen further testified that he wrote out such a statement for appellee's signature, but that because of the effect of the shock on his hands, appellee was unable to sign. There were no other witnesses to this alleged statement, and appellee testified that he was unable to remember any such conversation and that he did not even remember having seen Hallen before the trial of the case.

The uncontradicted testimony shows that appellee would not have received a shock unless he came into contact with two wires or unless, after coming into contact with one wire the current had grounded through him; and it appears that this latter would not have been the eventuality merely because of the fact that appellee was standing on a stepladder which rested upon the earth. It is, therefore, claimed by appellant that, inasmuch as the doctrine of res ipsa loquitur does not apply in Michigan, appellee, having failed to prove how the accident happened, is not entitled to recovery; and that there is no proof of any actionable negligence on appellant's part.

The evidence discloses that, attached to the side of the house, there was a metal conduit pipe rising about six feet from the ground; that the appellee's ladder rested against this pipe, and that a metal paint pail rested on one of the steps between his

feet. If the pail were in contact with the conduit and appellee's feet were in contact with the pail, there would have been an electric circuit through his body if he had also come in contact with one of the wires. Under appellee's testimony, such a contact was possible. But the construction of the ladder, and its position, with the usual small folding platform near its top, which was not extended at the time of the accident and seems to have formed a barrier between the inside part of the top of the ladder and the second step, would appear to have effectually prevented contact of the pail with the conduit pipe. Nevertheless, if one of the appellee's hands had come in contact with the bare ends of two of the wires, an electric circuit would have been established. From the photographic exhibits, it appears that the insulators were only an inch or so apart, and one of the appellee's hands could easily have come in contact with two of the wires during the painting operation. Indeed, it does not seem reasonable that appellee would have grasped the upturned wires with both of his hands in order to pull himself up or to support himself. The wires stuck up about two inches above the insulators, according to evidence submitted on appellee's behalf; and while the insulators themselves might have afforded such a support, it is difficult to see how the upturned wire stubs would have been of any help in appellee's alleged efforts to lift himself toward the cornice. When it is remembered that appellee also had a paint brush in one hand, and that he would be obliged to release his grasp on whatever he held to, every time he dipped the brush in the pail, appellant's theory that appellee grasped the two wires to bring himself into position for painting, loses persuasive force. It is obvious that the accident could have occurred in some manner other than by the appellee's grasping two wires at the same time.

■■■ Whether appellant was guilty of negligence was a question of fact, submitted by the trial court under proper instructions to the jury. Wires charged with electricity that can cause injury to persons are dangerous instrumentalities and must be installed and maintained with a degree of care commensurate with the peril to be avoided. Appellee was engaged upon a legitimate business which required him to work in close proximity to appellant's wires, and it could be assumed by appellant that if the wires were maintained in such manner that persons about their rightful occupation and business might come in contact with them, injury would result, and a failure to use due care to protect against such dangers would be negligence. "The test to be applied is: Was there a likelihood or reasonable probability of human contact with the wires by persons who had a right to be in a place from which such contact was possible? If so, the danger should have been foreseen or anticipated by the appellant." Clumfoot v. St. Clair Tunnel Co., 221 Mich. 113, 190 N.W. 759, 760. The fact that the trial court submitted instructions to the jury with regard to a duty on the part of appellant to inspect, although appellee did not base his case upon the negligent failure to inspect, was not reversible error.

■■■ The contention that the appellee was guilty of contributory negligence as a matter of law is not tenable. He was working where he had a right to be. The wires were insulated, except at the ends. While appellee knew that the wires were there, he did not notice that the insulation had worn off at the ends of the wires. As he was painting, the wires were about a foot above his head. Whether appellee grasped the wires deliberately, in disregard of his own safety, or whether, while in the exercise of due care, he came in contact with them, unaware of the danger, were disputed issues. It is claimed by appellant that inasmuch as other witnesses testified that after the accident they examined the wires and saw that they were not insulated at the ends, appellee could equally well have seen the same thing, and that he was guilty of contributory negligence in coming in contact with such wires. However, these witnesses were looking for the cause of the accident and, naturally, would concentrate their attention on whether there was any part of the wire exposed. Appellee was working about wires which were insulated, thereby affording an apparent protection against contact with them; Clumfoot v. St. Clair Tunnel Co., supra; and would not ordinarily be making a minute inspection to ascertain whether the insulation had frayed from the ends of the wires. To give rise to the defense of contributory negligence, it must be shown that appellee in coming in contact with the wires, voluntarily and unnecessarily exposed himself to danger, and if reasonable men might honestly differ on the question,

appellee cannot be held guilty of contributory negligence as a matter of law. Teachout v. G. R., etc., Railway Co., 179 Mich. 388, 146 N.W. 241. Under the evidence it cannot be said as a matter of law that appellee did not exercise that degree of care and caution that an ordinarily careful and prudent person would have exercised under the same or similar circumstances. Whether appellee was guilty of contributory negligence was clearly a question for the jury.

We come to the question whether appellant's negligence was the proximate cause of the injury. The direct cause of the shock was contact with a wire or wires. How this contact was made is not explicitly shown. But if it were found that appellant was guilty of negligence in maintaining the wires in a dangerous condition and that appellee was free from negligence, the jury could draw reasonable inferences from these facts and, from the resulting injuries, could properly find that appellee had suffered the shock as a result of appellant's negligence. Evidence that negligence was the proximate cause of the injury need not be direct and positive, but is susceptible of proof by evidence of circumstances bearing more or less directly upon the fact. Appellee was not bound to prove more than enough to raise a fair presumption of negligence on the part of appellant and of resulting injury to himself. Having done this, he was entitled to recover unless appellant produced evidence sufficient to rebut the presumption. Waidelich v. Andros, 182 Mich. 374, 148 N.W. 824. Whether injuries were caused by a shock received from electric wires, or from lightning, was properly submitted to a jury, where there was evidence that the shock could have been received from the wires, which were negligently maintained. Anthony v. Cass County Home Tel. Co., 165 Mich. 388, 130 N.W. 659. If one does an act and he knows, or by the exercise of reasonable foresight should have known, that in the event of a subsequent occurrence, which is not unlikely to happen, injury may result from his act, and such subsequent occurrence does happen and injury does result, the act committed is negligence and will be deemed to be the proximate cause of the injury, for which liability ensues unless there has been contributory negligence. Tozer v. Michigan Central Railroad Co., 195 Mich. 662, 162 N.W. 280.

With regard to the claim that the court erred in submitting the question of appellee's permanent injuries to the jury, it was shown by appellant that Mr. Ewing had previously filed a sworn declaration in another case alleging permanent injuries as a result of an accident, which occurred while he was working for a different employer. Such circumstance, however, as the trial court instructed, bore only upon the credibility of appellee. At the present time, appellee appears to be physically incapable of carrying on any gainful occupation, and under the proofs in the case, it was not error for the court to instruct the jury on permanent injuries.

Other claims of error are not sufficiently meritorious to require discussion. The judgment is affirmed.